**SO ORDERED.**

**SIGNED March 31, 2011.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

GULF FLEET HOLDINGS, INC., et al     CASE NO. 10-50713

     Debtors                     Chapter 11

                                        (Jointly Administered with Case Nos. 10-50714, 10-50715, 10-50716, 10-50717, 10-50718, 10-50719, 10-50720, 10-50721, 10-50722, 10-50723)
----------------------------------------------------------------
MICHAEL A. HILLMAN, DARLENE
HILLMAN and GRANT HILLMAN,

     Plaintiffs

VERSUS                                  ADVERSARY NO. 10-05042

GULF FLEET HOLDINGS, INC., et al,

     Defendants
----------------------------------------------------------------
MEMORANDUM RULING
----------------------------------------------------------------

      The present matter before the court is a motion for partial

summary judgment filed by plaintiffs, Michael A. Hillman, Darlene

Hillman, and Grant Hillman (collectively, "Hillman" or "Plaintiffs") in the above-captioned adversary proceeding. The focus of the motion is the validity of non-competition agreements between Hillman and Gulf Fleet Holdings, Inc. The court took Hillman's motion under advisement following a hearing on the motion.

### JURISDICTION

The court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. § 1334. The court finds that this is a core proceeding pursuant to the provisions of 28 U.S.C. § 157(b)(2).

### BACKGROUND

This case originated as a state court proceeding brought by Hillman against Gulf Fleet. Hillman filed a petition for declaratory judgment and injunction in the 15th Judicial District Court on February 22, 2010. Hillman's claims center on certain restrictions in a purchase agreement and employment agreement executed in connection with the sale of a business. Hillman owned and operated Gulf Fleet Management, LLC from January 1999 to May 2007. Gulf Fleet Management owned and operated a fleet of offshore supply vessels providing transportation services to oil rigs primarily in the Gulf of Mexico. In February 2007, Hillman and various Hillman-controlled entities agreed to sell 100% of the

-2-

ownership interest in Gulf Fleet Management, LLC, Gulf Fleet
Offshore, LLC, Gulf Ocean Marine Services, LLC, Gulf Fleet, LLC,
Gulf Worker, LLC, Hercules Marine, LLC, and Star Marine, LLC. for
cash and other consideration valued at approximately $63 million,
including 35% of the common stock of the acquiring entity, Gulf
Fleet Holdings, Inc. (hereinafter, "Gulf Fleet"). The parties
executed the Purchase Agreement on February 26, 2007, and the
transaction closed on May 1, 2007.[1] Plaintiff Michael Hillman was
employed as Gulf Fleet's president pursuant to an Employment
Agreement executed at the closing.[2] Both the Purchase Agreement
and the Employment Agreement contain non-competition agreements.
Specifically, paragraphs 6.6 of the Purchase Agreement provides:

> 6.6. <u>Non-Competition</u>. During the Restricted
> Period, each Seller [including M. Hillman and
> D. Hillman] agrees not to, directly or
> indirectly, alone or as a partner, officer,
> director, employee, consultant, agent,
> independent contractor, member or stockholder
> of any Person, engage in any business activity
> in the Restricted Area which is directly or
> indirectly in competition with the products or
> services being developed, marketed, sold or
> otherwise provided by the Companies or which
> is directly or indirectly detrimental to the

---

[1] A copy of the Purchase Agreement is included in the
summary judgment record as Exhibit 1 to Hillman's Memorandum in
Support of Partial Summary Judgment.

[2] The Employment Agreement is included in the summary
judgment record as Exhibit 2 to Hillman's Memorandum in Support
of Partial Summary Judgment.

business or business plans of the Companies; provided, however, that the record or beneficial ownership by a Seller of five percent (5%) or less of the outstanding publicly traded capital stock of any such company for investment purposes shall not be deemed to be in violation of this Section 6.6 so long as such Seller is not an officer, director, employee or consultant of such Person. Each Seller further agrees that, during the Restricted Period, such Seller shall not in any capacity, either separately, jointly or in association with others, directly or indirectly do any of the following: (a) employ or seek to employ any person or agent who is then employed or retained by the Companies (or who was so employed or retained at any time within two (2) years prior to the date the Sellers employ or seek to employ such Person); (b) solicit, induce, or influence any proprietor, partner, stockholder, lender, direct, officer, employee, joint venture, investor, consultant, agent, lessor, supplier, customer or any other Person which has a business relationship with the Companies, at any time during the Restricted Period, to discontinue or reduce or adversely modify the extent of such relationship with the Companies; and (c) submit, solicit, encourage or discuss any proposal, plan or offer to acquire an interest in any of the Companies, the Purchasers or their Affiliates identified potential acquisition candidates. The "Restricted Period" shall mean five (5) years after the date of this Agreement. The "Restricted Area" shall mean anywhere within the States of Texas, Louisiana, Mississippi, Alabama and Florida.

Section 4(b) of the Employee Agreement states:

(b) <u>Non-Competition</u>. The Executive agrees that for the period commencing on the Commencement Date and ending on the second

-4-

(2nd) anniversary of the date on which the Executive's employment with the Corporation is terminated (the "Non- Competition Period"), the Executive shall not directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent, independent contractor, member or stockholder of any person or entity ("Person"), engage in any business activity in **anywhere within the states of Texas, Louisiana, in the parishes indicated on Exhibit A attached hereto, Mississippi, Alabama, and Florida** which is directly or indirectly in competition with the Business of the Corporation or which is directly or indirectly detrimental to the Business or business plans of the Corporation or its affiliates; provided, however, that the record or beneficial ownership by the Executive of five percent (5%) or less of the outstanding publicly traded capital stock of any company for investment purposes shall not be deemed to be in violation of this paragraph 4(b) so long as the Executive is not an officer, director, employee, or consultant of such Person. The "Business" of the Corporation shall mean the actual or intended business of the Corporation during the Employment Period and as of the date the Executive leaves the employment of the Corporation. As of the date hereof, the Business of the Corporation is to support and service the oil and gas service industry with its fleet of offshore supply vessels, to charter its offshore vessels to oil and gas industry and to operate a vessel brokerage business to place third party offshore supply vessels with oil and gas operators. The Executive further agrees that during the Non-Competition Period, he shall not in any capacity, either separately or in association with others: (I) employ or solicit for employment or endeavor in any way to entice away from employment with the Corporation or its affiliates any employee of the Corporation or its affiliates; (ii) solicit, induce or influence any supplier,

-5-

> customer, agent, consultant or other person or
> entity that has a business relationship with
> the Corporation to discontinue, reduce or
> modify such relationship with the Corporation;
> nor (iii) solicit any of the Corporation's
> identified potential acquisition candidates.

The Purchase Agreement also contains a choice-of-law clause providing that the agreement is governed by Delaware law. <u>See</u> Purchase Agreement at 13.6. The Employment Agreement provides for the application of Louisiana law. <u>See</u> Employment Agreement at §11.

Gulf Fleet terminated Michael Hillman's employment effective March 1, 2010. Prior to the effective date of the termination, Hillman filed a Petition for Declaratory Judgment and Injunction in the 15th Judicial District Court in Lafayette Parish. Plaintiffs' state court petition seeks a declaratory judgment with respect to their rights and obligations under the non-competition provisions in the Purchase Agreement and Employment Agreement. Hillman also seeks injunctive relief against the enforcement of these provisions. Gulf Fleet filed for relief under Chapter 11 of the Bankruptcy Code on May 14, 2010. On June 3, 2010, Gulf Fleet filed a notice of removal pursuant to 28 U.S.C. §§ 1452 and 1334, and Rule 9027 of the Federal Rules of Bankruptcy Procedure. Following removal, Hillman filed the instant motion for a partial summary judgment.[3]

---

[3]Gulf Fleet filed a "cross-motion" for partial summary judgment directed at the issue of the validity of the choice-of-

**DISCUSSION**

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P 56(b).  The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial.  <u>See</u> <u>Matsushita Electric Industries v. Zenith Radio Corp.</u> 475 U.S. 574, 587 (1986).  Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  Where, as here, the movant does not bear the burden of persuasion, the movant may satisfy its summary judgment burden by pointing to an absence of evidence supporting an essential element of the non-moving party's claim.  <u>Id</u>. at 324-326.  Assuming that the movant has met this burden, the non-movant must come forward with "substantial evidence" supporting the essential elements challenged in the motion for summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477

---

law clause in the Purchase Agreement.  However, this motion was never noticed for hearing, and cannot properly be addressed herein.  Nevertheless, the issue raised in Gulf Fleet's cross-motion - - the validity of the choice-of-law clause - - must necessarily be addressed in connection with Hillman's motion.

U.S. 242, 250 (1986). "Substantial evidence" is evidence that is sufficient to withstand a motion for direct verdict and to support the verdict of a reasonable jury. _Id_. The non-movant cannot rely on unsupported assertions or arguments to survive summary judgment.

### B. The Purchase Agreement

Hillman first challenges the application of the Delaware choice-of-law clause in the Purchase Agreement to the non-competition provisions in that agreement. Hillman contends that this choice-of-law clause is invalid as to the non-competition provisions because the application of Delaware law violates Louisiana public policy against the enforcement of non-competition agreements. While Hillman does not address the validity of these provisions under Delaware law, he argues that the provisions do not comply with Louisiana law.

The rules of decision that govern the choice-of-law issues raised by Hillman are well settled. In _Klaxon Co. v. Stentor Elec. Mfg._, the Supreme Court held that a court must apply the choice-of-law rules of the forum where it sits when the court's jurisdiction is based on diversity of citizenship. _Klaxon Co. v. Stentor Elec. Mfg. Co._, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, this court's jurisdiction over the present matter is grounded on 28 U.S.C. § 1334(b), not diversity jurisdiction under 28 U.S.C. § 1332. Even though not explicitly bound by _Klaxon_,

-8-

bankruptcy courts generally apply the choice-of-law rules of the forum in which they sit over state-law claims that do not implicate federal policy. <u>Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.</u>, 642 F.2d 744, 748 (5th Cir. 1981); <u>In re Gaston & Snow</u>, 243 F.3d 599, 605 (2d Cir. 2001); <u>In re Merritt Dredging Co., Inc.</u>, 839 F.2d 203, 206 (4th Cir. 1988); <u>In re Southwest Equip. Rental, Inc.</u>, No. Civ. 1-90-62, 1992 WL 684872, at *9 (E.D. Tenn. July 9, 1992); <u>see also</u> <u>Warfield v. Carnie</u>, No. 3:04-cv-633-R, 2007 WL 1112591, at *7 (N.D. Tex. Apr. 13, 2007). Here, the parties' non-competition agreements and the choice-of-law clause arise from the pre-bankruptcy dealings of the parties, and the enforceability of these provisions is based on state law. Accordingly, this court will follow Louisiana choice-of-law rules.

Louisiana Civil Code article 3540 addresses the validity of contractual choice-of-law clauses. This provision provides that:

> All other issues of conventional obligations [besides capacity and form] are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

A threshold question under article 3540 is which state's law would apply absent a contractual choice-of-law clause. Louisiana Civil Code Article 3537 addresses the general choice-of-law rule

applicable to conventional obligations:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

Louisiana Civil Code Article 3515 addresses the general and residual choice-of-law rule:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

The factors that courts consider in determining the state "whose policies would be most seriously impaired" include: "(1) the contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by the other."  La. Civ. Code Art. 3537. Applying these factors to the instant case, the court agrees with Hillman that Louisiana law would apply to the non-competition

-10-

provisions in the Purchase Agreement absent the Delaware choice-of-law clause.  Gulf Fleet's principal place of business is located in Louisiana and the Hillmans reside in Louisiana.  Moreover, the Purchase Agreement involves the sale of a Louisiana limited liability company.  These facts are not disputed.

Given that Louisiana is "the state whose law would otherwise be applicable" to this dispute, does the application of Delaware law to the parties' non-competition agreement contravene the public policy of Louisiana?  The public policy of a state is not necessarily equivalent to the statutes enacted by its legislature.  Cherokee Pump & Equip., Inc. V. Aurora Pump, 38 F.3d 246, 252 (5th Cir. 1994) ("Not every law enacted by the legislature embodies the 'public policy' of the state.") Differences between the law of Delaware and the law of Louisiana may well lead to a different outcome depending on which state's law applies, but this difference in outcome does not mean that application of Delaware law necessarily contravenes the public policy of Louisiana.  Id. The commentary to article 3540 states that "only strongly held beliefs of a particular state qualify for the characterization of 'public policy'."  La. Civil Code article 3540 cmt. (f).  Hillman contends that Louisiana Revised Statute 23:921(A)(1) reflects Louisiana's longstanding public policy against the enforcement of non-competition agreements, and that application of Delaware law

-11-

to the parties' agreement in this case would contravene this public policy. The first sentence of section 23:921(A)(1) states that "every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void."

Hillman's public policy argument requires a closer examination of the historical context of section 23:921 and Louisiana courts' treatment of non-competition agreements. Prior to 1934, the treatment of non-competition agreements was left to the courts. See SWAT 24 Shreveport Bossier, Inc. v. Bond, 808 So. 2nd 294, 303 (La. 2001). Louisiana courts consistently held that non-competition restrictions between employees and employers were unenforceable because they violated public policy. Id.; Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 696 So.2d 1373, 1377-78 (La. 1997). This blanket prohibition of non-competition agreements ancillary to employment contracts was codified in 1934. Louisiana Smoked Products, Inc., 696 So. 2d at 1377-78. This 1934 statute was amended in 1962 to create a narrow exception allowing enforcement of non-competition agreements between employees and employers under certain circumstances. Id. The statute was re-drafted in 1989 to include a general prohibition of non-competition agreements subject to a number of

statutory exceptions involving various business relationships and transactions, including agreements involving the sale of businesses, agreements executed in anticipation of the dissolution of a partnership, and franchise agreements. _Id_. This is essentially the general form of section 23:921 that exists today.

Even though section 23:921 now covers a broader range of transactions and relationships, courts still frame the statute's underlying public policy concerns in terms of the employer-employee relationship. According to the Louisiana Supreme Court:

> The 1989 amendment's drafters explained in legislative committee hearings that the amendment was needed to rectify the courts' flawed interpretation of La. R. S. 23:921 and to restore the legislature's original intent to the statute. La. R. S. 23:921 was enacted amidst the trials of the Great Depression in 1934. The legislature's original intent for the enactment of La. R. S. 23:921 was to establish a public policy which would forbid the exclusion of individuals from the fields of work for which they were perhaps best suited at a time when the nation's economy was floundering and could not accommodate the vast numbers of workers in the work force. Consequently, La. R. S. 23:921, as it was drafted in 1934, declared null and unenforceable any provision in which an employee agreed not to compete with his employer following the termination of his employment. **Louisiana has consistently had a strong public policy against any employment contract which prohibits an employee from competing with a former employer. Moreover, the public policy of Louisiana, both prior to 1934 and later, as expressed in La. R. S. 23:921, has always been to prohibit (or severely restrict) noncompetition agreements between employers and employees**.

Louisiana Smoked Products, Inc., 696 So. 2d at 1379 (citations

-13-

omitted) (emphasis added); <u>see</u> <u>also</u> <u>Sentilles v. Kwik-Copy Corp.</u>,
652 So.2d 79 (La. App. 4th Cir. 1995) (observing that the "public
policy of Louisiana, both prior to 1934 and later, as expressed in
R.S. 23:921, has always been to prohibit (or severely restrict)
non-competition agreements between *employers and employees*")
(emphasis in original); <u>MedX, Inc. of Florida v. Ranger</u>, 780 F.
Supp. 398, 400 (E. D. La. 1991) (same). Some courts have grounded
this public policy on the unequal bargaining position between
employees and employers. <u>See</u>, <u>e.g.</u>, <u>National Motor Club, Inc. v.
Conque</u>, 173 So.2d 238, 241 (La. App. 3rd Cir.), writ denied, 175
So.2d 110 (1965) ("the strong public policy against non-compete
agreements stems from 'the disparity in bargaining power, under
which an employee, fearful of losing his means of livelihood,
cannot readily refuse to sign an agreement which, if enforceable,
amounts to his contracting away his liberty to earn his livelihood
except by continuing in the employment of his present
employer.'"); <u>Fine v. Property Damage Appraisers, Inc.</u>, 393 F.
Supp. 1304, 1310 (E.D. La. 1975) (same). Other courts have
articulated the basis for the policy as "an underlying state
desire to prevent an individual from contractually depriving
himself of the ability to support himself and consequently
becoming a public burden." <u>Bell v. Rimkus Consulting Group, Inc.
of Louisiana</u>, 983 So. 2d 927, 930 (La. App. 5th Cir. 2008).

-14-

Whether framed in terms of unequal bargaining power or protecting an employee's livelihood, these policy concerns originated from courts' early attempts to protect employees from non-competition restrictions imposed by employers.

The flaw in Hillman's public policy argument is that, unlike the National Motor Club or Bell cases, the choice-of-law clause and the non-competition provisions in the Purchase Agreement were executed in connection with the sale of a business for cash and other consideration exceeding $60 million. The long-standing policy concerns at play with respect to non-competition restrictions in employment contracts – unequal bargaining position and loss of livelihood – are not necessarily at play when the agreement at issue involves the sale of a business, even if, as here, the selling party later enters into a separate employment agreement. MedX, Inc. of Florida, 780 F. Supp. at 400; see also Target Rental Towel, Inc. v. Byrd, 341 So. 2d 600, 603 (La. App. 2nd Cir. 1977). Like the present case, the MedX case involved a non-competition agreement executed in connection with the sale of a business. 780 F. Supp. at 400. The defendant sold his business to the plaintiff and agreed to work for the plaintiff under the terms of an employment contract executed in connection with the sale. Id. As in the present case, the non-competition agreement was subject to a choice-of-law clause designating the law of

-15-

another jurisdiction. _Id_. Because the non-competition agreement was executed in connection with the sale of a business, the court held that the enforcement of the choice-of-law clause did not violate Louisiana public policy disfavoring the enforcement of non-competition restrictions on employees. _Id_. The court based its holding on an exception to the general prohibition of non-competition clause in Louisiana Revised Statute 23:921(B) which addresses non-competition agreements executed in connection with the sale of "the good will of a business." _Id_. According to the court, this statutory exception "is a codification of jurisprudence that favors enforcement of non-compete covenants that are made in connection with the sale of a business." _Id_. Even though the non-competition provision in _MedX_ was included in an employment agreement, the court concluded that the provision was "an incident of and was ancillary to the sale." _Id_. at 401. Here, like _MedX_, parties' the non-competition agreement was negotiated and executed in connection the sale of a business and, accordingly, does not invoke the strong public policy interests that arise in cases involving solely an employee-employer relationship. Like _MedX_, absent strong public policy to the contrary, the Delaware choice-of-law clause governing the Purchase Agreement and the parties' non-competition agreement is enforceable under Louisiana Civil Code article 3540. _See also_

-16-

<u>Sentilles</u>, 652 So. 2d 79 (La. App. 4th Cir. 1995) (enforcing choice-of-law provision in franchise agreement on the grounds that the franchisee's relationship with the franchiser was not an employee-employer relationship, thus making Louisiana's public policy against non-competition agreements inapplicable).

This result is supported by a 1999 amendment adding section 23:921(A)(2). Section 23:921(A)(2) provides that:

> The provisions of every **employment contract or agreement, or provisions thereof**, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

La. Rev. Stat. 23:921(A)(2) (emphasis added). Under this provision, choice-of-law clauses in employment contracts are not enforceable unless the clause is "expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action." La. Rev. Stat. 23:921(A)(2). While the legislature chose to restrict the enforcement of choice-of-law

-17-

clauses in employment agreements, no similar restrictions were enacted for agreements to sell all or part of a business. This omission further reinforces the reasoning of <u>MedX</u> that the enforcement of choice-of-law clauses in non-competition agreements executed in connection with the sale of business does not violate Louisiana public policy. Hillman attempts to overcome the impact of section 23:921(A)(2) by arguing that its restriction of choice-of-law clauses also applies to any proceeding between an employer and employee regardless of whether the choice-of-law clause is contained in an employment contract. Hillman's argument relies on the following highlighted clause of the statute:

> "... by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, **or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee** ...."

Hillman contends that this language is independent from the introductory clause of the section 23:921(A)(2), and thus provides grounds for invalidating choice-of-law provisions that are not contained in employment contracts. According to Hillman, the choice-of-law clause in the Purchase Agreement is invalid because this proceeding is a "civil or administrative action involving an employee." For Hillman, it is irrelevant that the choice-of-law

-18-

clause is included in an asset purchase agreement executed months before the execution of the parties' employment agreement. Hillman's reading of section 23:921(A)(2) is at odds with well established rules of statutory construction. A statute should be applied as written, including giving "effect to the literal application of the language of a statute, including its grammatical construction." <u>Pumphrey v. City of New Orleans</u>, 925 So. 2d 1202, 1211 (La. 2006). Hillman's reading of 23:921(A)(2) violates this cannon of construction by ignoring the introductory clause of this statutory provision, which specifically provides that it governs the "provisions of every **employment contract or agreement**, or provisions thereof...." The language cited by Hillman cannot be read grammatically or logically as independent from the limitations imposed by the first sentence of 23:921(A)(2). Giving the words of the statute their literal application, section 23:921(A)(2) applies specifically to choice-of-law clauses contained in employment contracts. Section 23:921(A)(2) is thus inapplicable to the choice-of-law clause at issue in the present case because the clause is not contained in an employment contract.

In sum, the choice-of-law clause in the Purchase Agreement is enforceable and Delaware law applies to the parties' non-competition agreement. <u>See</u> <u>Cherokee Pump and Equipment, Inc. v.</u>

-19-

<u>Aurora Pump</u>, 38 F.3rd 246, (enforcing choice-of-law clause under Louisiana law). Hillman has not challenged the validity of that agreement under Delaware law.  Accordingly, the court denies Hillman's motion for partial summary judgment with respect to the validity of the non-competition provisions of the Purchase Agreement.

**C.  The Employment Agreement**

Unlike the Purchase Agreement, the Employment Agreement provides that Louisiana law applies to that agreement.  Louisiana Revised Civil Statute 23:921(C) governs the enforceability of non-competition agreements between an employee and employer:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer **within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.** An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

-20-

(emphasis added). Hillman contends that the non-competition provisions in the Employment Agreement do not comply with these provisions in at least three respects. First, the geographic scope of the provisions is impermissibly broad and vague because they do not specify the specific parishes or municipalities in which Gulf Fleet conducts business. Second, the description of Gulf Fleet's business is not sufficiently specific. Third, Hillman contends that the provisions are impermissibly vague and overbroad to the extent that they bar competition in business areas that Gulf Fleet "intends" to enter.

The requirements of section 23:921(C) are strictly construed. Non-competition agreements that do not comply with these requirements are invalid. Sentilles Optical Servs., Div. Of Senasco, Inc. v. Phillips, 651 So.2d 395, 399 (La. App. 2d Cir. 1995) (Louisiana courts generally require "mechanical adherence to the requirements listed in the law (especially the geographical and time limitations)"). Traditionally, courts have refused to reform non-competition agreements with provisions that violate section 23:921(C). In SWAT 24 Shreveport Bossier, Inc. v. Bond, 808 So.2d 294, 298 (La. 2001), the supreme court held that courts could preserve a defective non-competition agreement by relying on a contractual savings clause to "excise" offending provisions from the agreement. See also Vartech Sys., Inc. v. Hayden, 951 So.2d

-21-

247, 257 n.10 (La. App. 1st Cir. 2006)(noting that <u>SWAT 24</u> "indicates a more expansive use of severability or savings clauses to reform and enforce non-compete agreements"). However, savings clauses cannot be used to re-write a non-competition agreement or to add language omitted from the agreement. <u>Ferrellgas, L.P. v. McConathy</u>, 10-cv-00178, 2010 WL 1010831 (W.D. La. March 15, 2010).

With respect to the geographic scope of a non-competition agreement, the agreement must specifically identify the parishes or municipalities that are covered by the agreement. Courts have invalidated agreements that frame geographic boundaries broadly by state or that define their geographical reach solely by distance from a place of business. <u>See</u> <u>Francois Chiropractic Center v. Fidele</u>, 630 So.2d 923, 926 (La. App. 4th Cir. 1993); <u>Ferrellgas</u>, 2010 WL 1010831 at *6-7. Courts have also invalidated non-competition agreements that generically refer to all municipalities or parishes where the employer's clients are located without specifically identifying any municipality or parish. <u>See</u> <u>Bell v. Rimkus Consulting Group, Inc. Of LA</u>, 983 So.2d 927, 932 (La. App. 5th Cir. 2008)(agreement referred to a "Designated Geographic Area" which is defined as "any standard or consolidated metropolitan statistical area as those terms are defined by the United States Department of Commerce," but did not list specific parishes or municipalities). The non-competition

-22-

provisions in the Employment Agreement cover activities "anywhere within the states of Texas, Louisiana, in the parishes indicates on Exhibit A attached hereto, Mississippi, Alabama, and Florida ...." Employment Agreement at § 4. Exhibit A to the Employment Agreement lists all 64 Louisiana parishes. Hillman contends that this listing is tantamount to designating the entire state of Louisiana.

The court agrees with Hillman that Gulf Fleet cannot enforce a non-competition agreement in parishes where it does not carry on a like business. As a result, the non-competition provisions in the Employment Agreement are unenforceable with respect to parishes where Gulf Fleet does not do business. However, this does not mean that the parties' non-competition agreement is unenforceable in its entirety as matter of law. In <u>Vartech Systems</u>, the court held that a similar listing of 64 Louisiana parishes did not "automatically render the specification overly broad." 951 So.2d at 258 (citing <u>Hose Specialty & Supply Mgmt. Co., Inc. V. Guccione</u>, 865 So.2d 183, 188-9, 194 (La. App. 5th Cir. 2003)). The court's ruling was based in part on a savings severability clause that allows the court to strike parishes from the non-competition agreement if the evidence presented during an evidentiary hearing on a preliminary injunction showed that the employer did not conduct business in all 64 parishes. <u>Id</u>. Like <u>Vartech Systems</u>, the Employment Agreement has a severability

-23-

clause.  In addition,  while Exhibit A lists all 64 parishes, the specific designations of individual parishes allows the court to excise parishes from the scope of the non-competition provision in the Employment Agreement based on the evidence presented at trial. In contrast, the non-competition agreements in <u>Bell</u> and <u>Ferrellgas</u> had no designation of any specific municipalities or parishes. Even with a savings clause, the courts in those cases could not reform the non-competition agreements without re-writing the agreements.  In sum, if Gulf Fleet cannot establish that it conducts business in certain parishes as required by section 23:921(C), the non-competition provision will be unenforceable as to those parishes.  Summary judgment, however, is inappropriate because there are genuine issues of material fact with respect to the parishes in which Gulf Fleet conducts business.

The other geographic designations in the Employment Agreement, however, cannot be enforced.  The listing of the states of Texas, Mississippi, Alabama, and Florida do not list specific municipalities.  The term "parishes" in section 23:921(C) is equivalent to "counties" in other states. <u>Hose Specialty & Supply Mgmt. Co., Inc. V. Guccione</u>, 865 So.2d 183, 188-9, 194 (La. App. 5th Cir. 2003).  Accordingly, a non-competition agreement that includes states in addition to Louisiana must still comply with the requirement of section 23:921(C) by identifying the specific municipalities or counties covered by the agreement. <u>Id</u>. The

-24-

Employment Agreement does not comply with section 23:921(C) with respect to the designation of Texas, Mississippi, Alabama, and Florida. However, given the severability clause in the Employment Agreement, this defect does not invalidate the parties' non-competition agreement in its entirety. Consistent with <u>SWAT 24</u>, the court will strike the references to Texas, Mississippi, Alabama, and Florida in section 4 of the Employment Agreement. Hillman is entitled to partial summary judgment in this regard.

With respect to the description of Gulf Fleet's business in section 4 of the Employment Agreement, Hillman contends that the description is impermissibly vague. Specifically, Hillman challenges the inclusion of the term "intended business" in the definition of Gulf Fleet's business: "The 'business' of the Corporation shall mean the actual **or intended** business of the Corporation during the Employment Period and as of the date the Executive leaves the employment of the Corporation." Employment Agreement at § 4 (emphasis added). Hillman contends that the reference to intended business is vague because an employee could not reasonably ascertain Gulf Fleet's intended business, and also because the language allows Gulf Fleet to bar competition based on "a speculative *future intention* to engage in a like business." Hillman's Memorandum at 19 (emphasis in the original).

A valid non-competition agreement may exclude a former employee from "carrying on or engaging in a business similar to

-25-

that of the employer ...." La. Rev. St. 23:921(C). The agreement need not include a description of the employer's business to be valid. Vartech Systems, 951 So.2d at 258-59; Moores Pump and Supply, Inc. v. Laneaux, 727 So.2d 695, 698 (La. App. 3d Cir. 1999); Ticheli v. John H. Carter Co., Inc., 996 So.2d 437 (La. App. 2d Cir. 2008). However, if a description of the business is included in the agreement, the description "cannot be overly broad, such that it prevents former employees from engaging in more activities than were performed for the former employer." Id. at 259; H.B. Rentals, LC v. Bledsoe, 24 So.3d 260 (La. App. 3d Cir. 2008) (inclusion of "potential" customers in non-solicitation agreement and lack of geographic restrictions resulted in invalid agreement).

Applying the statutory language to the definition of Gulf Fleet's business in section 4 of the Employment Agreement, Hillman has not established that the parties' non-competition agreement is invalid as a matter of law. Section 4 states that "[a]s of the date hereof, the Business of the Corporation is to support and service the oil and gas service industry with its fleet of offshore supply vessels, to charter its offshore vessels to oil and gas industry and to operate a vessel brokerage business to place third party offshore supply vessels with oil and gas operators." Hillman has not established that this definition is overly vague or that it sweeps in business activities that are not "similar" to Gulf Fleet's business. To the extent that the term

-26-

"intended business" in the section 4 of the Employment Agreement includes in business activities that are not similar to the actual business conducted by Gulf Fleet, the agreement cannot be construed to preclude Hillman from that activity under section 23:921(C). However, this is not a case like <u>H.B. Rentals</u>, where the agreement at issue prohibited solicitation of potential customers without limitation and failed to designate the specific parishes covered by the agreement. In <u>H.B. Rentals</u>, the court concluded that these multiple defects in the agreement could not be cured simply by excising the offending language in the agreement. In the instant case, the term "intended business" may be excised without re-writing the agreement. Hillman has failed to establish that the non-competition provisions in the Employment Agreement are facially invalid.

**D. Hillman's Breach of Contract Allegations.**

Finally, Hillman contends that the non-competition provisions in both the Purchase Agreement and the Employment Agreement are unenforceable because Gulf Fleet failed to fully perform its obligations under the agreements. Based on the summary judgment record, the court concludes that there are genuine issues of material fact that preclude summary judgment in favor of Hillman based on Gulf Fleet's failure to perform under the agreements at issue.

-27-

## CONCLUSION

For the foregoing reasons, the court **GRANTS in part** and **DENIES in part** Hillman's motion for partial summary judgment. The motion is **GRANTED** in part with respect to the designation of Texas, Mississippi, Alabama and Florida in the non-competition provisions contained in the Employment Agreement. In all other respects, the motion is **DENIED**. Hillman shall submit an order in conformity with the court's ruling within thirty (30) days.

###